rented to a Mr. Taylor for two years. In 1906 the taxpayer and her family moved to New York, taking all the furniture out of the house. In the spring of 1909 the property was listed for sale or rent with real estate brokers at Summit, N. J. It remained on the lists of the brokers until it was sold in 1920 and was rented by one or another of said brokers from time to time until its sale.

When the taxpayer and her family left the property in 1906 they rented an apartment in New York and definitely determined at that time not to occupy the property again and to dispose of it at the earliest opportunity. The business interests of the husband of the taxpayer were partly in New York and partly in St. Louis, Mo., and the taxpayer had in mind the possibility of moving to St. Louis and living there permanently. In the fall of 1913 the taxpayer and her family moved to St. Louis and purchased a house there in the spring of 1914. They lived there until the death of the taxpayer's husband in 1920, which occurred after the sale of the property involved.

### DECISION.

The determination of the Commissioner is approved.

---

Appeal of ALBION LAND CO.                          Docket No. 314.

> Evidence *held* insufficient to sustain the claim of the taxpayer for a deduction on account of a debt alleged to have been ascertained to be worthless and charged off.

Submitted February 5, 1925; decided March 23, 1925.

*L. E. Rusch, Esq.*, for the taxpayer.
*W. Frank Gibbs, Esq.*, for the Commissioner.

Before STERNHAGEN, TRAMMELL, and TRUSSELL.

This appeal is from a determination by the Commissioner of a deficiency in income and profits taxes for the year 1917. It is based upon the disallowance by the Commissioner of the amount of $56,-584.84 claimed by the taxpayer as a bad debt in 1917.

### FINDINGS OF FACT.

The taxpayer is a corporation organized under the laws of Pennsylvania, with its principal office at Pittsburgh, Pa. During the

years 1913, 1914, and 1915 all of the taxpayer's capital stock was owned and held by the Bindley Hardware Co., a corporation. In the year 1916 the capital stock of the taxpayer was transferred by the Bindley Hardware Co. to John Bindley in trust for creditors of the Hardware Company, and in the same year was distributed among the creditors in proportion to the respective amounts due them. During the period January 1, 1913, to February 28, 1917, Edward H. Bindley was president of both corporations.

During the years 1909 to 1913, inclusive, the taxpayer lent or advanced to the Bindley Hardware Co. large sums of money, and on December 31, 1913, the Hardware Company was indebted to the taxpayer in the amount of $197,963.53.

The Bindley Hardware Co. in May, 1912, began to liquidate its affairs. The process of liquidation continued until February 28, 1917, when, having satisfied its creditors, the corporation surrendered its charter and ceased to exist. In order to enable the Bindley Hardware Co. to discharge its obligations and terminate its business, the taxpayer made further advances to it in the amounts of $34,415.57 in the year 1914, $79,198.38 in the year 1915, $59,932.71 in the year 1916, and $87,017.58 in January and February of the year 1917. It was not expected that all the money advanced would be repaid. A portion of the advances or loans made by the taxpayer was advanced to it for the purpose by its stockholders.

In the year 1913 the taxpayer began to charge off as worthless the original debt of $197,963.53 owing to it from the Bindley Hardware Co. In computing its net income for the years 1914, 1915, and 1916, it deducted, as debts ascertained to have become worthless and charged off within the taxable year, the amounts of $19,796.35, $23,620.30, and $42,081.92, respectively. In the taxpayer's income-tax returns for the years 1914, 1915, and 1916, it was stated that the "deducted losses" were ascertained to be such in the year 1912, and that the debtor was insolvent and in process of liquidation.

In computing its net income for the year 1917 the taxpayer deducted, as a debt ascertained to have become worthless and charged off within the taxable year, $56,584.84 of the amount due it from the Bindley Hardware Co. Part of the amount so charged off and deducted represented money paid by the taxpayer to its stockholders in settlement of amounts owing to them by the Hardware Company. The evidence does not disclose whether the remainder of the amount charged off and deducted by the taxpayer in 1917 was a part of the old debt of the Bindley Hardware Co. created prior to January 1, 1914, or part of the debt created thereafter.

The Commissioner disallowed the deduction of $56,584.84, taken by taxpayer on its return for the year 1917, and determined that there is a deficiency in tax for that year in the amount of $5,238.25.

### DECISION.

The determination of the Commissioner is approved.